McConnell *v.* City of Knoxville.*

(*Knoxville,* September Term, 1937.)

Opinion filed Nov. 27, 1937.

*This case reprinted and annotated in 113 A. L. R., 966.

Max Moskowitz, of Knoxville, for Harry McConnell.

Wayne Parkey and Howard F. Jarvis, both of Knoxville, for City of Knoxville.

Mr. Justice DeHaven delivered the opinion of the Court.

Plaintiff in error, Harry McConnell, hereinafter referred to as defendant, was convicted of selling condoms in violation of Ordinance No. 637 of the City of Knoxville, and his punishment fixed at a fine of $10. He has appealed to this court and assigned errors.

Defendant is a duly licensed merchant operating a small stand, or store, on Market street in the City of Knoxville. His stock in trade consists of certain small articles, such as candies, chewing gum, razor blades, and condoms. On March 27, 1936, a police officer went to the stand operated by defendant and there purchased from him a quantity of condoms. Defendant introduced no proof on the trial, and agreed that the sale to the officer was made under such circumstances as would make him subject to fine, provided the ordinance relied upon by the city is valid and constitutional. The ordinance in question is as follows:

"An Ordinance regulating the sale of appliances, drugs and medicinal preparations intended or having special utility for the prevention of conception and/or venereal diseases.

"Be it ordained by the Council of the City of Knoxville:

"Section 1: That it shall be unlawful for any person, copartnership, corporation, enterprise or association of any type (except such persons operating in such manner as is specified in Section 3) to sell, give away, or otherwise distribute to the public in stores, on the streets, by vending machines, by peddling from house to house, or in any public place or office building, or in any manner whatsoever, within the corporate limits of the City of Knoxville, any appliance, drug or medicinal preparation intended or having special utility for the prevention of conception and/or venereal disease.

"Section 2: It shall be unlawful for any person, copartnership, corporation, enterprise or association of any type to display or expose for sale, any appliance, drug or medicinal preparation, intended or having special utility for the prevention of conception and/or venereal disease, or to display or expose any containers or packages therefor, descriptive or suggestive of the contents or to advertise the sale of the same on any placards, billboards, handbills, newspapers, periodicals, signs, or by any means of publication either visual or auditory, either individually or by broadcast, within the corporate limits of the City of Knoxville.

"Section 3: The prohibition specified in Section 1 shall not apply to wholesale druggists, or others specifically licensed by the State of Tennessee, to the extent that such druggists or others are permitted to sell or distribute appliances, drugs and medicinal preparations specified in Section 1 (but only such as conspicuously bear the identification of the manufacturer thereon, or on the retail container thereof) only to regularly licensed drugstores; nor shall the prohibition specified in Section 1 of this ordinance apply to the sale or dis-

tribution of such appliances, drugs or medicinal preparations by regularly licensed practitioners of medicine in the normal course of their professional activities; nor shall the prohibition specified in Section 1 of this ordinance apply. to the sale of such appliances, drugs or medicinal preparations by licensed drugstores, provided such sales are made only from the prescription counters of such drugstores by registered pharmacists there employed, and only to persons more than eighteen years of age.

"Section 4: Any person, copartnership, corporation, enterprise or association, whether principal or agent, violating any of the provisions or terms of this ordinance, shall upon conviction in the Municipal Court of the City of Knoxville, be fined the sum of not less than $10.00 nor more than $50.00 and any vending machine operated in violation of this ordinance, together with the merchandise contained therein, shall be destroyed by order of the Municipal Judge.

"Section 5: This ordinance is hereby declared to be necessary for the preservation of the public peace, health and morals, and shall be published and become effective when and as required by law.

"Section 6: That this ordinance shall take effect seventeen days from and after its passage, the welfare of the City requiring it."

It is insisted that the ordinance is invalid because it gives to a special group of merchants privileges which it denies to others, in violation of section 8, article 11, of the Constitution of the State of Tennessee. The position taken by defendant is that the handling of condoms is not such that it requires any special or technical knowledge in order that the purchaser may be protect-

ed, and may be compared to patent medicines, in that they are prepared ready for immediate use by the public and sold to consumers in the original packages, without further preparation or instructions, and without the necessity of any special or technical knowledge on the part of the seller. It is further insisted that the ordinance in no way regulates the sale of goods enumerated therein, but merely prohibits their sale, except by the classes mentioned.

The ordinance is declared, in section 5 thereof, ''to be necessary for the preservation of the public peace, health and morals'' of the residents of Knoxville.

The only reason assigned why the ordinance is discriminatory is, in effect, that any licensed merchant can sell the goods enumerated therein with the same safety to the purchaser as if sold at the prescription counter of a licensed drugstore, by a licensed pharmacist, or by a physician in the normal course of his practice.

█ █ If any possible reason can be conceived to justify the classification contained in a legislative enactment, it will be upheld and deemed reasonable. *Peters* v. *O'Brien,* 152 Tenn., 466, 278 S. W., 660; *Hunter* v. *Conner,* 152 Tenn., 258, 277 S. W., 71; *Bank of Commerce & Trust Co.* v. *Senter,* 149 Tenn., 569, 260 S. W., 144. One who assails a classification made in a police measure must carry the burden of showing that such classification is essentially arbitrary. *Darnell* v. *Shapard,* 156 Tenn., 544, 3 S. W. (2d), 661.

█ The classification contained in the ordinance is, we think, natural and reasonable. Certainly, the prohibition of the sale of contraception goods, except by a licensed pharmacist at the prescription counter of a licensed drugstore, or by a licensed physician, and only

to persons more than eighteen years of age, tends to preserve public morals, as well as the health and safety of the people of the community, particularly the children and the young men and women. It cannot be doubted that the indiscriminate sale of contraception goods by peddlers and vending machines, at stores and filling stations, is a menace to the morals and health of the people.

Defendant strongly relies on the case of *State of Arizona* v. *Childs,* 32 Ariz., 222, 257 P., 366, 54 A. L. R., 736, where it was held that a statute prohibiting the vending of drugs, medicines, or poisons, in the original package of the manufacturer, or of patent or proprietary medicines, by persons who are not registered pharmacists, *which could in no manner protect or benefit the public,* was unconstitutional as granting a special or exclusive privilege. It may be freely admitted, in the instant case, that if the ordinance in question has no reasonable relation to the morals, health, and safety of the people of Knoxville, it would be invalid as an unauthorized exercise of the police power of the city.

In *Motlow* v. *State,* 125 Tenn., 547, 589, 145 S. W., 177, 188, L. R. A. 1918F, 177, the court said:

"The police power is a necessary one, inhering in every sovereignty, for the preservation of the public safety, the public health, and the public morals. It is of vast and undefined extent, expanding and enlarging in the multiplicity of its activities as exigencies demanding its service arise in the development of our complex civilization. It is a function of government solely within the domain of the Legislature to declare when this power shall be brought into operation, for the protection or advancement of the public welfare."

196

■ Under the Charter of the City of Knoxville (chapter 412, Private Acts 1923) broad and full power is given the city council for the passage of an ordinance such as the one here in question. Subsection 16 of section 5 gives the city specific power:

"To define, prohibit, suppress, prevent, and regulate all acts, practices, conduct, business, occupation, callings, trades, uses of property and all other things whatsoever detrimental to the health, morals, comfort, safety, convenience or welfare of the inhabitants of the city, and to exercise general police powers under the provisions of this Act and the general law."

Other provisions in the charter are to like effect.

Our conclusion is that the ordinance here in question is valid and constitutional. The judgment of the trial court must, therefore be affirmed.