IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 9, 2001

## EL-SHABAZZ AHKEEN v. DONAL CAMPBELL, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 00-1282-I     Irvin H. Kilcrease, Jr., Chancellor**

_____

**No. M2000-02411-COA-R3-CV - Filed November 2, 2001**

_____

A state prisoner appeals the trial court's dismissal of his petition for writ of certiorari seeking judicial review of sanctions imposed in prison disciplinary proceedings. He asserts the proceedings denied him due process and that the board's failure to follow Department of Correction policies and procedures constituted an illegality under state law grounds for common law writ of certiorari. We affirm the trial court and hold (1) the sanctions imposed did not trigger due process protections, (2) the alleged failure to follow specific procedures did not amount to failure to follow the essential requirements of the law in the context of prison disciplinary proceedings, and (3) there was evidence to support the board's finding.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM C. KOCH, JR., J., joined.

El-Shabazz Ahkeen, Henning, Tennessee, Pro Se.

Paul G. Summers, Attorney General and Reporter, Michael E. Moore, Solicitor General, Dawn Jordan, Assistant Attorney General, Nashville, Tennessee, for the appellees, Donal Campbell, West Tennessee State Penitentiary Disciplinary Board, Lisa Reynolds and James Dukes.

### OPINION

Mr. El-Shabazz Ahkeen appeals from the dismissal by the trial court of his petition for statutory and common law writ of certiorari to review action by the disciplinary board of the institution in which Appellant is incarcerated. The petition alleges that the board found Appellant guilty of the offense "conspiracy to violate state law of forgery," a violation of the Department of Correction policy 502.02 IV. The petition further alleges that the punishment imposed by the board was five days in punitive segregation, suspended for sixty days, and a $20.00 fine.

The trial court granted summary judgment to respondents, holding the punishments and restrictions on Appellant did not impose such atypical and significant hardships as to create a liberty interest that would invoke due process requirements.

The proper method for judicial review of a prison disciplinary board decision is by petition for common law writ of certiorari. *Rhoden v. State Dep't. of Correction,* 984 S.W.2d 955, 956 (Tenn. Ct. App. 1998) (citing *Bishop v. Conley*, 894 S.W.2d 294 (Tenn. Cr. App. 1994)).[1]  Under such a petition, a court's review of administrative agency decisions is very limited.  Tenn. Code Ann. § 27-8-101 provides:

> The writ of certiorari may be granted whenever authorized by law, and also in all cases where an inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally, when, in the judgment of the court, there is no other plain, speedy, or adequate remedy.

Where a petitioner challenges the correctness of the decision of the board or other decision-maker, the common law writ does not provide a remedy. *Yokley v. State*, 632 S.W.2d 123, 126 (Tenn. Ct. App. 1981).  Because the intrinsic correctness of the decision of the lower tribunal is not subject to judicial review,  *Powell v. Parole Eligibility Review Bd.*, 879 S.W.2d 871, 873 (Tenn. Ct. App. 1994), the scope of review is generally limited to a determination of whether the administrative body acted outside its jurisdiction or arbitrarily, capriciously, or illegally.  *Cooper v. Williamson County Bd. of Educ.*, 746 S.W.2d 176, 179 (Tenn. 1987).

The writ itself is an order issued by a superior court to compel an inferior tribunal to send up its record for review.  *Pigg v. Casteel*, No. 01A01-9807-CH-0038, 1999 WL 166499, at *2 (Tenn. Ct. App. Mar. 29, 1999) (no Tenn. R. App. P. 11 application filed).  In order to warrant issuance of the writ, the petition must sufficiently allege that the inferior tribunal acted outside its jurisdiction, illegally, fraudulently, or arbitrarily.  The writ of certiorari is considered an extraordinary remedy, and it is not available as of right. *Clark v. Metro. Gov't of Nashville and Davidson County*, 827 S.W.2d 312, 316 (Tenn. Ct. App. 1991).  The decision of whether to grant the writ, thus compelling the filing of the record of proceedings below, lies within the sound discretion of the trial court. *Boyce v. Williams*, 215 Tenn. 704, 713-14, 389 S.W.2d 272, 277 (1965).

Mr. Ahkeen alleges that he received a letter from a friend who was incarcerated in an Arkansas prison asking him to draft a letter of recommendation for parole to be signed by the friend's mother-in-law.  He prepared two such letters and sent them to his friend.  Arkansas prison officials intercepted the letters and notified Tennessee prison officials.  The result was the

---

[1]*See also Perry v. Cold Creek Correctional Facility Disciplinary Bd.,* No. M1999-01898-COA-R3-CV, 2000 WL 1137710, at *3 (Tenn. Ct. App. Aug. 9, 2000) (no Tenn. R. App. P. 11 application filed) *and Buford v. Tennessee Dep't. of Correction*, No. M1998-000157-COA-R3-CV, 1999 WL 1015672, at *3-4 (Tenn. Ct. App. Nov. 10, 1999) (no Tenn. R. App. P. 11 application filed) (determining that the common law writ, as opposed to the statutory writ, is the appropriate mechanism).

disciplinary charge and proceeding. TDOC Policy 502.05 IV (L) defines the offense of "conspiracy to violate state law" as "two or more persons, each having the culpable mental state required for the offense which is the object of the conspiracy and each acting for the purpose of promoting or facilitating the commission of the state criminal offense." The offense Mr. Ahkeen was charged with conspiring to commit was forgery or fraud. Mr. Ahkeen asserts that the procedure used by the disciplinary board was defective and denied him due process of law.

## I. Due Process

Any due process analysis must begin with a determination of what process, if any, was due in the circumstances presented. The United States Supreme Court has several times discussed the extent of the due process guarantees applicable to prison disciplinary proceedings and has held that "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S. Ct. 2963, 2975, 41 L. Ed. 2d 935, 951 (1974) (citing *Morrissey v. Brewer*, 408 U.S. at 488, 92 S. Ct. at 2603). In *Wolff*, the Court recognized that the unique requirements of prison life necessarily involve the loss by prisoners of many rights afforded to unincarcerated citizens. The Court also established the minimal constitutional requirements which must be met in prison disciplinary proceedings, including written prior notice of the charges, an opportunity to present witnesses when not hazardous to institutional safety and goals, an impartial decision maker, and a written statement as to the evidence relied on and the reason for the action taken. *Wolff*, 418 U.S. at 564-66, 94 S. Ct. 2978-79.

The United States Supreme Court later limited the application of *Wolff*, essentially holding that a prisoner's liberty or property interest is not sufficient to trigger due process in a number of situations where disciplinary sanctions are imposed. An inmate is only entitled to the limited due process rights provided in *Wolff* when the sanctions impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-85, 115, S. Ct. 2293, 2300-01(1995). The inmate in *Sandin* had been placed in punitive segregation for thirty days due to a disciplinary infraction. The Court held that those who are incarcerated pursuant to a valid conviction are not entitled to constitutional due process in prison disciplinary procedures that result in brief periods of disciplinary segregation, and determined that thirty days was a brief period. *Sandin*, 515 U.S. at 186, 115 S. Ct. at 2301.

This court has applied the *Sandin* holding to various types of sanctions, finding these sanctions are not atypical so as to trigger due process. *Dotson v. TDOC*, No. 01A001-9811-CV-00596, 1999 WL 430405, at *1 (Tenn. Ct. App. June 29, 1999) (no Tenn. R. App. P. 11 application filed) (placement in five day segregated confinement suspended for sixty days, loss of six months of visitation privileges, and payment for a drug screen); *Mack v. Jones*, No. 03A01-9806-CV-00215, 1999 WL 172645, at *3 (Tenn. Ct. App. Mar. 24, 1999) (no Tenn. R. App. P. 11 application filed) (transfer to a more secure or severe prison facility); *Blackmon v. Campbell*, No. 01A01-9807-CH-00361, 1999 WL 85518, at *1 (Tenn. Ct. App. Feb. 23, 1999) (no Tenn. R. App. P. 11 application filed) (removal from a prison job); *Hawkins v. Sundquist*, No. 01A01-9803-CH-00164, 1999 WL

22386, at *1 (Tenn. Ct. App. Jan. 21, 1999) (placement of prison in lockdown status due to violent incidents); *Compton v. Commissioner*, No. 01A01-9710-CH-00539, 1998 WL 195978, at *2 (Tenn. Ct. App. April 24, 1998) (no Tenn. R. App. P. 11 application filed) (reclassification from minimum security to medium security status).

Mr. Ahkeen alleges that the sanctions given him by the disciplinary board included five days in punitive segregation, suspended for sixty days, and a $20.00 disciplinary fee. As the trial court determined, the punishments imposed on Mr. Ahkeen do not constitute an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Therefore, Mr. Ahkeen can claim no liberty interest to which due process attaches.

Mr. Ahkeen alleges that the loss of the opportunity to earn sentence reduction credits is a liberty interest triggering due process. He has not alleged that the sanctions imposed against him included loss of accumulated sentence reduction credits. This court has determined that such loss can implicate an interest sufficient to invoke due process.[2] *Livingston v. Board of Paroles*, No. M1999-01138-COA-R3-CV, 2001 WL 747643 (Tenn. Ct. App. July 5, 2001) (no Tenn. R. App. P. 11 application filed); *see Greene v. Tennessee Dep't. of Correction*, No. 01A01-9608-CH-00370, 1998 WL 382204, at *3 (Tenn. Ct. App. Jul. 10, 1998) (no Tenn. R. App. P. 11 application filed) (prisoner had a property interest in accumulated, or already earned, good and honor time credits). Mr. Ahkeen argues, however, that his disciplinary conviction resulted in a change of status which prevented him from earning sentence reduction credits he would otherwise have been eligible to earn. For example, Tenn. Code Ann. § 41-21-236(4) provides, "no sentence credits for institutional behavior may be awarded for any month in which a prisoner commits a disciplinary offense of which he is found guilty." Mr. Ahkeen alleges that his disciplinary conviction, therefore, resulted in his inability to earn six days of sentence reduction credits by operation of the statute. He also alleges that his disciplinary conviction included a change in security status which will result in his loss of the opportunity to earn another 72 days of sentence reduction credits over the next 18 months.

A prisoner has no right to sentence reduction credits; "[s]uch sentence credits shall not be earned or credited automatically, but rather shall be awarded on a monthly basis to an inmate at the discretion of the responsible warden . . . ." Tenn. Code Ann. § 41-21-236(a)(2-3). Thus, there is no cognizable interest in unearned sentence credits. The due process clause protects "only genuine claims involving pre-existing entitlement . . . not . . . unilateral expectations or abstract needs or desires." *Kaylor v. Bradley*, 912 S.W.2d 728, 735 (Tenn. Ct. App. 1995). A similar claim was made in *Person v. Morgan*, 181 F.3d 103 (table), 1999 WL 282615 (6th Cir. 1999) (UNPUBLISHED

---

[2]In *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill*, 472 U.S. 445, 105 S. Ct. 2768 (1985), the U.S. Supreme Court explained its holding in *Wolff v. McDonnell* as requiring procedural protections, by virtue of the due process clause, before a prison inmate could be deprived of a protected liberty interest in accumulated good time credits. *Hill,* 472 U.S. at 453, 105 S. Ct. at 2773. In *Hill*, the Court recognized the holding by the Massachusetts Supreme Judicial Court that state law created a liberty interest in such credits. *Id*. Massachusetts statute provided that accumulated sentence credits could be lost "if a prisoner violates any rule of his place of confinement." *Id*. at 447, 2769. We note that Tennessee statutes provide for the loss by a prisoner of previously earned sentence reduction credits only in certain circumstances. Tenn. Code Ann. § 41-21-236(a) and (g).

-4-

OPINION), wherein the prisoner contended that the sanction of segregation he received for a disciplinary infraction affected the length of his incarceration because he could not earn sentence reduction credits while in segregation. The court found:

> Person's claim lacks an arguable basis in law. First, a prisoner has no inherent constitutional right to remain free of administrative segregation. Second, unless Person's disciplinary conviction resulted in an atypical and significant hardship on him in relation to the ordinary incidents of prison life or will inevitably affect the duration of his sentence, he lacks the liberty interest required for a due process challenge to his conviction. Although Person argues that his stay in segregation, occasioned by his disciplinary conviction, precludes his opportunity to earn sentence reduction credits that would lead to an earlier release, such speculative, collateral consequences of a prison disciplinary conviction are insufficient to create a liberty interest.

*Id*. at *1 (citations omitted).

The gravamen of Mr. Ahkeen's claim is that the disciplinary board failed to follow its own procedures. It is well-settled that allegation of such failure does not invoke due process considerations.

> Thus language in state laws or prison regulations no longer creates a liberty interest protected by the Due Process Clause. Rather, from now on, when analyzing due process claims federal courts look neither to state laws or regulations to ascertain whether they create a liberty interest in connection with a housing assignment, imposition of administrative or disciplinary segregation, reclassification, job assignment, or a prison transfer, nor to the subjective motives of prison officials for effecting such changes. Instead, the Court focuses on the nature of the deprivation itself.

*Reinholz v. Campbell*, 64 F. Supp. 2d 721, 729 (W.D. Tenn. 1999) *aff'd*, 198 F.3d 247 (6th Cir. 1999). As the *Reinholz* court observed, after *Sandin*, "prisoners may no longer peruse state statutes and prison regulations searching for the grail of limited discretion. Instead, a prisoner has a liberty interest" only in those deprivations described in *Sandin* as imposing atypical and significant hardship on the inmate. After *Sandin*, the nature of the deprivation actually imposed is the appropriate focus for a determination of whether a liberty interest is implicated, not the content of any prison regulations.

Therefore, we conclude that Mr. Ahkeen failed to allege any liberty interest subject to due process protections and his petition was properly dismissed as to those grounds.

## II. "Illegality" Under Common Law Writ of Certiorari

This court has held that the common law writ of certiorari is available to correct the "essential illegality" of a denial of procedural rights guaranteed by the federal and state constitutions. *State v. Womack*, 591 S.W.2d 437, 442 (Tenn. Ct. App. 1979). However, Mr. Ahkeen maintains that by failing to follow TDOC disciplinary policies, the board acted illegally, regardless of whether its actions also amounted to a deprivation of constitutional due process. We do not disagree that state law can create remedies which are additional to those created by constitutional provisions. Additionally, we do not disagree that, while allegations of constitutional violations are one type of "illegality" supporting judicial review by common law writ of certiorari, *Davis v. Campbell*, No. 01A01-9712-CH-00755, 1998 WL 812533, at *1 (Tenn. Ct. App. Nov. 25, 1998) (no Tenn. R. App. P. 11 application filed) (allegation of denial of due process is allegation that the board and warden acted arbitrarily and illegally), they are not the only basis for a claim that a board has acted illegally. *Hoover v. Metro Bd. of Zoning Appeals,* 924 S.W.2d 900, 905 (Tenn. Ct. App. 1996)*; Harless v. City of Kingsport*, No. 03A01-9707-CH-00289, 1998 WL 131519, at *4 (Tenn. Ct. App. Mar. 25, 1998) (no Tenn. R. App. P. 11 application filed) (giving examples of circumstances supporting allegations of illegal or arbitrary board action).

However, a writ of certiorari "provides a vehicle for a court to remove a case from a lower tribunal to determine whether there has been a failure to proceed according to the essential requirements of the law." *Clark*, 827 S.W.2d at 317 (concurring opinion) (citing *Gallatin Beer Regulation Comm'n v. Ogle*, 185 Tenn. 482, 206 S.W.2d 891, 893 (1948)). Thus, an allegation of illegality sufficient to support judicial review of the board's decision must involve a failure to follow "essential requirements of the law."

> It must be borne in mind that the functions of certiorari are simply to ascertain the validity of proceedings before a court of justice, either on the charge of their invalidity, because the essential forms of the law have not been observed, or on that of the want of jurisdiction in the court entertaining them. . . . Hence, it has been held that the supervisory jurisdiction of the court on a certiorari must be restricted to an examination into the external validity of the proceedings had in the lower court. . . . The supervisory powers of the court should not be confounded with its appellate jurisdiction.

*Hoover Motor Express Co. v. Railroad & Public Utilities Comm.*, 195 Tenn. 593, 601, 261 S.W.2d 233, 236 (1953) (citations omitted).

The Department of Correction is vested with the management and government of state prisons, Tenn. Code Ann. § 4-6-102, and in describing this grant of authority, our Supreme Court has stated:

The legislature has provided the TDOC considerable deference and broad dscretionary powers to enable TDOC to manage its tremendous responsibilities . . . . This broad grant of legislative discretion necessarily includes the power to establish policies and procedures for handling disciplinary matters.

*Mandela v. Campbell*, 978 S.W.2d 531, 534 (Tenn. 1998). Pursuant to this grant of authority, the Department has established Uniform Disciplinary Procedures whose stated purpose is, "To provide for the fair and impartial determination and resolution of all disciplinary charges placed against inmates . . . ." TDOC Pol. & Proc. # 502.01 II. These procedures include a general policy statement:

> Fair and impartial disciplinary proceedings will be administered against inmates charged with disciplinary infractions. The procedures contained herein alone shall govern the disciplinary process. This policy is not intended to create any additional due process guarantees for inmates beyond those which are constitutionally required. Minor deviations from the procedures set forth below shall not be grounds for dismissal of a disciplinary offense unless the inmate is able to show some prejudice as a result and the error would have affected the disposition of the case.

TDOC Pol. & Proc. # 502.01 V.

Mr. Ahkeen's specific allegations of failure to follow the Department's procedures include an assertion that his disciplinary hearing was held more than seven days after he received notice of the charge against him, in violation of the policy which states that "no inmate charged with a disciplinary offense should be required to wait more than 7 calendar days until his disciplinary hearing is held, unless the hearing is continued pursuant to [procedures]. Failure to comply with this provision may constitute grounds for dismissal."[3] Mr. Ahkeen made a pre-hearing motion to dismiss on the basis of this policy, and the denial of the motion is another ground for his allegation the board failed to follow procedures. He has not alleged any harm to him from the slight delay.[4]

He next asserts the hearing did not comply with TDOC procedures because it was held by one member of the disciplinary board. He asserts that the offense with which he was charged could have resulted in sanctions which, according to TDOC policies, require a hearing by a full hearing panel. The TDOC procedures require a three-member hearing panel for hearings on certain types of offenses, generally those with more severe punishment. A hearing on any offense which may result in loss of accumulated sentence credits is to be conducted by a three-member panel. However, the procedures specifically provide limitations on the sanctions which may be imposed by any panel other than a three-member panel; for example, any recommendation or loss of accumulated sentence

---

[3]Mr. Ahkeen alleged he was charged on February 9, the hearing was continued on February 17, and was held on February 22.

[4]The record of the disciplinary hearing indicates he was not segregated while waiting for his hearing.

credits may be made only by a three-member panel. Mr. Ahkeen does not allege he received a sanction that was not within the authority of a one-member panel to impose or recommend. Instead, he argues that he was entitled to a three-member hearing panel because he could have received those sanctions. Again, since he was not given the more severe sanctions, he has not alleged how he was harmed by use of the procedure for less serious offenses.

Mr. Ahkeen also asserts that the one member of the board who conducted his hearing should not have been allowed to do so because she was disqualified by a TDOC policy which prohibits employees sitting on any hearing panel when he or she has a personal interest in the outcome of the case.[5] The alleged personal interest is that Mr. Ahkeen had previously filed a grievance and a lawsuit alleging retaliation for the grievance against several prison employees, including the panel member's husband.[6] Mr. Ahkeen does not make any other allegations about the "personal interest" of the board member. We note the disciplinary charges herein were brought by other employees of the prison, and the disciplinary board's decision was subject to appeal to the warden. The policy upon which Mr. Ahkeen relies provides that a deputy or associate warden will arbitrate any determinations on the eligibility of a particular employee to participate as a hearing panel member in a particular hearing. Mr. Ahkeen does not allege that he asked for such arbitration. In fact, he did not raise this issue in his appeal of the disciplinary board's decision to the warden.

We do not consider these allegations of failure to follow internal TDOC procedures to amount to allegations that the disciplinary board did not follow the essential requirements of the law. In the context of prison disciplinary proceedings, both the Tennessee Supreme Court and the United States Supreme Court have recognized the broad discretion necessary to allow prison officials to perform their responsibilities and, in shaping the law in this area, have also taken into consideration the realities of life in prison. Courts have recognized that lawfully convicted prisoners may be subjected to disciplinary proceedings which do not ensure "a full panoply of rights." *Wolff*, 418 U.S. at 540, 94 S. Ct. at 2967. A prisoner's interest in sanctions which may be imposed pursuant to such proceedings is a liberty or property interest, and that interest does not extend to sanctions which do not "impose atypical and significant hardship" beyond the ordinary incidents of prison life. *Sandin*, 115 S. Ct. at 2295. Therefore, we conclude that the "essential requirements of the law" in this area are those established by the due process clause. Where the Tennessee legislature has not imposed more stringent requirements on prison disciplinary procedures,[7] we decline to do so. Without a constitutional or statutory "essential requirement", the writ of certiorari procedure does not authorize

---

[5]TDOC Pol. & Proc. # 502.01 VI. A.2 also prohibits an employee from sitting on a hearing panel where he or she is the reporting officer, participated in the investigation of the charge, has personal knowledge of the case, or is the inmate's assigned counselor, inmate relations coordinator, or unit manager.

[6]The lawsuit had been dismissed, and the dismissal affirmed on appeal before the charge herein was brought. *Ahkeen v. Parker*, No. W1998-00640-COA-R3CV, 2000 WL 52771 (Tenn. Ct. App. Jan. 10, 2000)(no Tenn. R. App. P. 11 application filed).

[7]*See* Tenn. Code Ann. § 40-35-317.

courts to create one. Therefore, a failure to sufficiently allege a due process violation in the conduct of prison disciplinary proceedings is also a failure to allege, under common law writ of certiorari grounds, that a disciplinary board has acted illegally by not following the essential requirements of the law.[8] Accordingly, allegations that the board acted illegally by failing to follow TDOC procedures do not, in and of themselves, support issuance of a writ of certiorari to review the legality of the board's decision.

### III. Material Evidence

Mr. Ahkeen also asserts that the disciplinary board's finding that he violated a department rule is not supported by the evidence. In *Wolff v. McDonnell*, the United States Supreme Court determined that one of the minimal constitutional requirements applicable to prison disciplinary proceedings is a written statement of the evidence relied on and the reason for the action taken. *Wolff*, 418 U.S. at 564-66, 94 S. Ct. at 2978-80. In *Superintendent v. Hill*, the Court determined that "the minimum requirements of procedural due process", where due process attaches, include a requirement that the findings of a prison disciplinary board be supported by some evidence in the record. *Hill*, 472 U.S. at 454, 105 S. Ct. at 2773. As discussed above, the Court also determined in *Sandin* that due process is not implicated by all actions taken by a prison disciplinary board, and we have determined that the deprivations alleged by Mr. Ahkeen are not the type triggering a due process analysis. Nonetheless, the United States Supreme Court's discussion of the due process requirement that some evidence support a disciplinary board's determination provides insight which is relevant to our discussion of a similar state law requirement. In *Superintendent v. Hill*, the Court examined the standard that due process is met "if there was some evidence from which the conclusion of the administrative tribunal could be deduced." *Hill*, 472 U.S. at 455, 105 S. Ct. at 2774. The Court, declining to adopt a more stringent evidentiary standard as a constitutional requirement, stated:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board. . . . The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact.

*Id.*

Under state law, one of the questions raised by an allegation that a board or commission acted illegally or arbitrarily is whether the record contains any material evidence to support the decision

---

[8]We do not imply that a statutory violation cannot constitute a failure to conform to the essential requirements of the law.

below.[9] *Davison v. Carr*, 659 S.W.2d 361, 363 (Tenn. 1983); *Hoover v. Metropolitan Bd. of Housing Appeals*, 936 S.W.2d 950, 954 (Tenn. Ct. App. 1996); *Metropolitan Air Research Testing Auth., Inc. V. Metropolitan Gov't. of Nashville and Davidson County*, 842 S.W.2d 611, 619 (Tenn. Ct. App. 1992). Absent some material evidence, the petitioner is entitled to relief under the common law writ of certiorari.

However, any such judicial review is limited to finding some evidentiary basis, and "neither the trial court nor this court determines any disputed question of fact or weighs any evidence." *Gallatin Housing Auth. v. City Council, City of Gallatin*, 868 S.W.2d 278, 280 (Tenn. Ct. App. 1993). The Tennessee Supreme Court has explained, "The scope of review under the common law writ does not ordinarily extend to a redetermination of the facts found by the administrative body." *Cooper,* 746 S.W.2d at 179. Further,

> The writ has never been employed to inquire into the correctness of the judgment rendered where the court had jurisdiction, and was therefore competent. Hence it has been held that the supervisory jurisdiction of the court on a certiorari . . . cannot be exercised to review the judgment as to its intrinsic correctness, either on the law or on the facts of the case.

*Hoover Motor Express Co.*, 195 Tenn. at 601, 261 S.W.2d at 236 (citations omitted). In other words, "it is not the correctness of the decision that is subject to judicial review, but the manner in which the decision is reached." *Powell v. Parole Eligibility Bd.*, 879 S.W.2d 871, 873 (Tenn. Ct. App. 1997).

The appellees filed the record of the disciplinary proceeding.[10] Mr. Ahkeen also filed the record, or parts thereof, as attachments to his pleadings. The notice of charges states that information was received from the Arkansas prison system confirming that Mr. Ahkeen and an

---

[9]The requirement of some material evidence to support the decision of the lower tribunal has been treated analytically as (1) a test for "illegality," see, e.g., *Hoover v. Metropolitan Bd. of Zoning Appeals*, 924 S.W.2d at 904-05 (A determination that there is no material evidence to support the decision requires the reviewing the court to "conclude that the administrative body acted illegally."); (2) as a standard for "arbitrary" action, *see, e.g., South v. Tennessee Bd. of Paroles,* 946 S.W.2d 310, 311 (Tenn. Ct. App. 1996) ("One useful criterion for determining whether a decision can be considered to be arbitrary is whether or not it has a rational basis. Perhaps another might be whether it is supported by any substantial and material evidence in the record."); (3) as a separate basis for grant of relief under the common law writ of certiorari, s*ee, e.g.*, *Lions Head Homeowners' Ass'n. v. Metropolitan Bd. of Zoning Appeals*, 968 S.W.2d 296, 303 (Tenn. Ct. App. 1997) (Persons seeking relief under common law writ of certiorari have the burden of demonstrating the board "exceeded its jurisdiction, acted illegally, arbitrarily, or without material evidence to support its decision.") While it is not necessary to precisely categorize the appropriate grounds for such a challenge, we think it is clear that a decision that is not based on some material evidence is subject to judicial review and reversal. Thus, we distinguish lack of evidence in the record from "failure to follow essential requirements of the law."

[10]The record was attached to an affidavit certifying it as the disciplinary appeal, and the affidavit was filed in support of the motion for summary judgment. This filing, in essence, complies with the requirement for filing of the record upon grant of the writ of certiorari. Because it is certified to be the entire record, we will consider it as such.

Arkansas inmate were conspiring to commit fraud by falsifying documents for the other inmate's parole consideration. According to the hearing report, the charging officer testified at the hearing. Both the report and Mr. Ahkeen's appeal state that the letter of recommendation and a personal letter to his friend, the Arkansas inmate, were presented as evidence at the hearing. Thus, there was some evidence presented.

Mr. Ahkeen's appeal states his real claim: that there was no evidence of his intent to conspire to commit fraud or forgery. That claim is essentially an allegation that the board made incorrect inferences or reached incorrect conclusions based on the evidence that was presented. We interpret that claim to be an attack on the intrinsic correctness of the board's decision. As such, it does not constitute a ground for relief under the common law writ of certiorari. Where the essence of the complaint is an attack on the correctness of the board's decision, dismissal is warranted. *Turner v. Tennessee Bd. of Paroles*, 993 S.W.2d 78, 80 (Tenn. Ct. App. 1999). Neither the trial court nor this court is authorized to weigh the evidence or to substitute its judgment for that of the board. *McCullen v. City of Memphis*, 786 S.W.2d 633, 642 (Tenn. 1990).

Accordingly, we affirm the trial court's dismissal of the petition for writ of certiorari. Costs are taxed to the appellant, El-Shabazz Ahkeen.

_____
PATRICIA J. COTTRELL, JUDGE